**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Opportunity Employment Commission,<br><br>          Plaintiff,<br><br>vs.<br><br>McLane Company, Inc.,<br><br>          Defendant. | No. CV-12-615-PHX-GMS<br><br>**ORDER** |

This is an action for enforcement of an administrative subpoena issued by the Equal Employment Opportunity Commission ("E.E.O.C.") to McLane Company, Inc. ("McLane"). The E.E.O.C. has applied for an Order to Show Cause why the Administrative Subpoena Should not be Enforced. (Doc. 1). McLane has moved for leave to file a sur-reply (Doc. 20) and the E.E.O.C. has moved for leave to file a reply to the sur-reply (Doc. 22). A hearing was held on March 23, 2012. At the hearing, the E.E.O.C. indicated that the agency had withdrawn a number of the requests that were made in its initial subpoena, but did not state in particular which requests had been withdrawn. The motions and hearing focused on requests for the results of the Industrial Physical Capacity Services Physical Capacity Exam ("IPCS PCE"), along with pedigree information and contact information for employees and applicants who had taken this exam. For that reason, this Order is limited to ruling on those requests.

**BACKGROUND**

This case involves McLane's use of a physical capacity exam ("PCE") administered by Industrial Physical Capacity Services, Inc. ("IPCS"). On August 8, 2010, the E.E.O.C. sent a letter to Bobby Carlson, the President of McLane Sunwest, a subsidiary of McLane, stating that it was conducting an investigation of McLane under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626 (2006) ("ADEA"). The letter stated the investigation was being conducted pursuant to two charge numbers. The first, charge number 540-2008-01093, correlates to a charge filed by a McLane Sunwest employee on January 7, 2008 alleging that she had been discriminated against based on her gender when she had not been re-hired after taking maternity leave because she had failed the IPCS PCE. (Doc. 14-5, Ex. 1). The second, charge number 540-2010-01761, was initiated by the E.E.O.C. pursuant to its authority under the ADEA. On November 8, 2010, the E.E.O.C. wrote another letter, stating it was requesting information pursuant only to the ADEA investigation that it had initiated on its own accord. (Doc. 2-3, Ex. 2). The E.E.O.C. requested that McLane provide it with detailed information on the IPCS PCE and another test, information on how McLane uses the tests, and validation studies regarding the test. Relevant here, the E.E.O.C. also asked for pedigree information, including the name, date of birth, social security number and contact information for every person who took the test, along with the reason the person took the test, the person's score on the test, and any adverse action that McLane took based on the person's performance on the test. (Doc. 2-3, Ex. 3 at 3). In addition, the E.E.O.C. requested that McLane inform the E.E.O.C. whether it carries liability insurance, and if so that McLane provide the E.E.O.C. with a copy of its policy. (*Id.* at 2).[1]

McLane wrote to the E.E.O.C. on January 19, 2011 that it considered the request overbroad, particularly since no ADEA charge had ever been filed by any individual. (Doc.

---

[1] The request for proof of insurance is not at issue in this Order, and the Court does not decide whether the E.E.O.C. is authorized to seek such information under the ADEA, or whether such information is "relevant" to an investigation of whether using the ICPS PCE constitutes age discrimination.

1  15-5, Ex. 12). The E.E.O.C. issued a subpoena on February 11, 2011, seeking essentially the
2  same information. (Doc. 2-4, Ex. 3). McLane petitioned to revoke the subpoena on February
3  22, 2011. (Doc. 15-7, Ex. 15). Since the petition to revoke, McLane has provided the
4  E.E.O.C. with a database which identifies employees and applicants that took the IPCS PCE
5  by an employee number, but which does not include their names or social security numbers.
6  The database provides an individual's age and whether the individual passed the IPCS PCE.
7  The database does not provide an individual's actual score, and does not record whether an
8  adverse employment action was taken against those who failed the test. (Doc. 15-3, Ex. B).
9       McLane argues that the names, last known addresses, and social security numbers of
10 employees and applicants that took the test are not relevant to an investigation of whether the
11 IPCS PCE is a discriminatory test, and further that providing information on applicants that
12 is not captured in its human resources database would require manual searches of paper
13 records, and thereby presents an undue burden.

**DISCUSSION**

**I.     Legal Standard**

16      A District Court's review of an administrative subpoena is "strictly limited."
17 *Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1430 (9th Cir. 1983) *abrogated on other*
18 *grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), *as recognized by*
19 *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)). Raising a defense does not
20 defeat a subpoena, and a court may not "refuse to enforce an administrative subpoena when
21 confronted by a fact-based claim." *E.E.O.C. v. Karuk Tribe Housing Authority*, 260 F.3d
22 1071, 1076 (9th Cir. 2001) A court reviewing the validity of an administrative subpoena
23 instead conducts a three-part inquiry, asking: "(1) whether Congress has granted the authority
24 to investigate; (2) whether procedural requirements have been followed; and (3) whether the
25 evidence is relevant and material to the investigation." *Children's Hosp.*, 719 F.2d at 1428.
26 The administrative agency shoulders the burden of demonstrating that these three prongs are
27 met. *Id.*
28      If the agency demonstrates that it has authority to investigate, the procedural

- 3 -

requirements have been followed, and the evidence is relevant and material to the investigation, the burden shifts to the respondent, who must show that a subpoena is "overbroad or unduly burdensome" for a court to quash it. *E.E.O.C. v. Quad Graphics*, 63 F.3d 642, 648 (7th Cir. 1995). The question of whether an administrative subpoena is overbroad may be answered by asking whether "the demand for information is too indefinite or has been made for an illegitimate purpose." *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). A subpoena may be unduly burdensome if either 1) "the cost of gathering this information is unduly burdensome in the light of the company's normal operating costs," or 2) "gathering the information would threaten [a respondent's] normal business operations." *E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986). Moreover, "[i]f the personnel or financial burden on the employer is great compared to the resources the employer has at its disposal, the district court should attempt to alleviate this burden." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 654 (7th Cir. 2002).

**II.     Analysis**

    **A.     Validity of Subpoena**

The subpoena is valid if the E.E.O.C. can show that Congress has authorized it to issue such a subpoena, the subpoena was issued in a procedurally proper way, and the information requested in the subpoena is relevant to the agency's investigation. *Children's Hosp.*, 719 F.2d at 1428.

        **1.     Congressional Authority**

Investigations conducted by the E.E.O.C. under Title VII or the ADA are "triggered by the filing of a charge of discrimination. *E.E.O.C. v. Federal Exp. Corp.*, 558 F.3d 842, 849 (9th Cir. 2009). Under the ADEA, on the other hand, the E.E.O.C. "shall have the power to make investigations" even when no charge is filed. 29 U.S.C. § 626(a). Pursuant to this power, the administrator or his representative may obtain records "as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter." 29 U.S.C. § 211. The Supreme Court has noted that the E.E.O.C. has "independent authority to investigate age

1 discrimination." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). A subpoena issued pursuant to an independent investigation under the ADEA is therefore issued pursuant to congressional authority.

Since the E.E.O.C. may only investigate age discrimination under the ADEA, however, the subpoena is only congressionally authorized to the extent that it seeks information relating to an investigation of age discrimination, and the E.E.O.C. may not investigate other forms of discrimination without a charge. No person who took the test while under the age of 40 could seek relief for age discrimination under the ADEA. Once it has information concerning all persons who took the test and their ages when they took it, as well as their scores, the E.E.O.C. will have the information necessary to ascertain whether there is a correlation between age and test performance. But, even assuming there is such a correlation, the E.E.O.C. has no congressional authority, without more, to seek the names, contact information, or social security numbers of those people under the age of 40 who took the test. Respondent will not be required to provide contact information for people who have no standing to bring an ADEA claim. *See* 29 C.F.R. § 1625.2.

### 2. Procedural Requirements

The E.E.O.C.'s power to issue subpoenas "has been delegated by the Commission, pursuant to section 6(a) of the Act, to the General Counsel, the District Directors, the Field Director of the Office of Field Programs, or their designees." 29 C.F.R. § 1626.16(b). The subpoena was issued by District Director Rayford O. Irwin, and Respondent does not contest that it was issued pursuant to the procedural requirements.

### 3. Relevance

Courts evaluating whether to enforce a subpoena issued in relation to a Title VII or ADA investigation generally look to whether the requested information is relevant to the charge that initiated the investigation. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994) (whether information is relevant to a charge "depends upon the scope of both the

1   E.E.O.C. charge and the E.E.O.C. investigation").[2]

2   The Supreme Court has found that the relevance limitation "is not especially constraining." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). *Shell*, like nearly all of the cases cited by both parties in their discussion of relevance, was a Title VII case that had been initiated by a charge of discrimination. That case had been initiated by a Commissioner's charge that Shell had engaged in discriminatory practices including, but not limited to:

> 1. Failing or refusing to recruit, hire, promote, train, assign or select Blacks for managerial, professional, technical, office/clerical, craft, and service worker positions because of their race.
>
> 2. Failing or refusing to recruit, hire, promote, train, select, and assign females to managerial, professional, technical, craft, operative, laborer and service worker positions because of their sex.

*Shell*, 466 U.S. at 57.

The E.E.O.C. had notified Shell that it was under investigation because its compliance manual stated that it should investigate "employers . . . who employ a substantially smaller proportion of minorities and/or women in their higher paid job categories than in their lower paid job categories," and that Shell fell within this category of employers. *Id.* at 58. Shell challenged the subpoena, claiming that its workforce as a whole mirrored the demographics of the relevant metropolitan area as a whole, demonstrating that "the charge that has been issued has not been supported by the facts." *Id.* at 57. Noting that Shell was mounting a fact-based defense, the Court found that the relevancy limitation provides the Commission "access to virtually any material that might cast light *on the allegations against the employer*." *Id.* at 69 (emphasis added). Nevertheless, it cautioned that "Congress did not eliminate the relevance requirement, and we must be

---

[2] The E.E.O.C. also relies on *E.E.O.C. v Karuk Tribe Housing Authority*, 260 F.3d 1071 (9th Cir. 2001). In *Karuk*, the E.E.O.C. had received an age discrimination charge, and there was no question that the subpoena was relevant to that charge. Instead, the question was whether an asserted defense to the charge—in that case, on sovereign immunity grounds—can defeat an administrative subpoena. *Id.* at 1077.

- 6 -

1 careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity." *Id.* Finding that the Commission had "developed a complex set of procedures for identifying employers who may be engaged in serious systemic discrimination" before issuing a commissioner's charge, the Court concluded that the subpoena in question was "relevant" to the detailed charge this process created. *Id.* at 70.

Other courts interpreting the relevancy requirement of administrative subpoenas issued pursuant to a charge have cautioned that there must be "a reasonable nexus between the initial charge and the subsequent allegations in the complaint," *EEOC v. Harvey L. Walner & Assoc.,* 91 F.3d 963, 968 (7th Cir. 1996), that an investigation must be "reasonably related in scope to the allegations of the underlying charge," *EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996) and that the claim eventually brought "depends upon the scope of both the EEOC charge and the EEOC investigation." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).

In a self-initiated investigation conducted pursuant to the ADEA, however, there is no charge. In such cases, the ensuing subpoenas must relate to the subject matter of a specific investigation identified by the E.E.O.C.[3] Justice Marshall cautioned in *Shell* that an E.E.O.C. Commissioner must not "be permitted merely to allege that an employer has violated Title VII," because such a result would "render nugatory the statutory limitation of the Commission's investigative authority to materials 'relevant' to a charge." *Shell*, 466 U.S. at 72. Were the E.E.O.C. to be permitted to obtain by fiat any information that a

---

[3] The statutory requirement in Title VII cases is that a subpoena be "relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a) (2006). The statute governing ADEA investigations, 29 U.S.C. § 626(a), states that investigations are to be conducted in compliance with 15 U.S.C. § 209, which in turn refers to Section 49, which grants the E.E.O.C. power to subpoena "documentary evidence relating to any matter under investigation." 15 U.S.C. § 49 (2006). No party has argued that the "relating to any matter under investigation" requirement is less stringent than Title VII's relevancy requirement, and the E.E.O.C. has cited Title VII caselaw, including *Shell*, approvingly.

- 7 -

1  District Director had a hunch that such information "might cast light" on any possible
2  violation of any provision in the ADEA, without reference to any particular "allegations
3  against the employer," Justice Marshall's suspicions would be confirmed. *Shell*, 466 U.S.
4  at 68. Judicial review of administrative subpoenas for relevance may be strictly limited, but
5  it is not wholly illusory.

6  Here, the E.E.O.C. has provided the following definition of its investigation to the
7  Court: "The EEOC is investigating under the ADEA Respondent's use of a physical
8  capability strength test to make decisions concerning hiring, terminations, promotions, and
9  whether employees can return to work following leaves of absence of 30 days or more."
10 (Doc. 2 at 2).[4] To the extent that caselaw evaluating whether subpoenas are sufficiently
11 relevant to a charge is applicable, the Court will consider whether the information is relevant
12 to the definition of its investigation that the E.E.O.C. provided. Neither in its briefings nor
13 in its papers has the E.E.O.C. presented any explanation why the names and contact
14 information of individuals who have taken the ICPS PCE are "relevant" to an investigation
15 of McLane's use of the test to make employment decisions. The stated definition of the
16 investigation does not suggest that the E.E.O.C. is investigating any acts of discrimination
17 against particular individuals, and the E.E.O.C. has stated nothing to suggest it has any basis
18 for conducting such an investigation.[5] The E.E.O.C.'s independent investigatory power is
19 broad, but as it has defined its investigation, the genders, names, contact information, and
20 social security numbers of individual employees are simply not relevant—an individual's

---

[4] From the record, it does not appear that the E.E.O.C. has provided a definition to McLane that is any more specific than "a nationwide investigation of all facilities owned and/or operated by McLane Company is being conducted under the Age Discrimination in Employment Act of 1976." (Doc. 11-5, Ex. 7). As discussed above, such a broadly worded investigation risks eliminating the relevancy requirement entirely. *See Shell*, 466 U.S. at 72.

[5] At the hearing, the E.E.O.C. represented that it would be amenable to making a presentation *in camera* on the reasons it is requesting individual names, social security numbers, and phone numbers of every employee who took the test, including those under forty. The Court will consider any such submission, and any related claims to the deliberative process privilege, when it is received.

1 name, or even an interview he or she could provide if contacted, simply could not "shed
2 light on" whether the ICPS PCE represents a tool of age discrimination in the aggregate.
3 *Shell*, 466 U.S. at 69. The E.E.O.C. has provided nothing to the Court to allay the concerns
4 raised by McLane that such data has been requested as a means of trolling for possible
5 complainants, not merely for ADEA claims, but for Title VII claims as well. "An
6 administrative subpoena may not be so broad so as to be in the nature of a 'fishing
7 expedition.'" *Peters v. U.S.*, 853 F.2d 692, 699–700 (9th Cir. 1988).

8 McLane has provided the E.E.O.C. with details on the results of the test, but has not
9 provided individualized test scores, has not provided information as to whether an employee
10 who failed the test suffered an adverse employment action near the time of the test, and has
11 not provided data on whether any such employment action was a direct result of failing the
12 test. All of this information is relevant to the E.E.O.C. investigation, even as the
13 investigation is defined by the E.E.O.C. Except with regards to the individual contact
14 information for employees and applicants, the requested information at issue for the
15 purposes of this Order is valid.

16 **B.    Overbreadth and Unduly Burden**

17 The "investigatory powers of the EEOC should be interpreted broadly," but an
18 administrative subpoena "cannot be so broadly stated as to constitute a 'fishing expedition.'"
19 *E.E.O.C. v. K-Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir. 1982). As noted above, pedigree
20 information (other than age) and contact information of individual employees is not relevant
21 to a broad investigation of whether using the ICPS PCE constitutes age discrimination under
22 the ADEA. Were the information in some way relevant, the E.E.O.C. would nevertheless
23 not be entitled to it because the request is overbroad. The E.E.O.C. has included in the
24 administrative subpoena a request for the contact information for all employees who took
25 the test—even those who passed and those who were under 40 when they took it. Even
26 presuming that contacting people who were over 40, failed the test, and thereafter suffered
27 some adverse employment action was "relevant" to a broad based investigation on whether
28 using the test constitutes age discrimination, asking for contact information for those people

- 9 -

who could not state a claim for age discrimination suggests that "the demand for information is too indefinite or has been made for an illegitimate purpose." *University of Pennsylvania*, 493 U.S. at 191.

McLane has conceded that it can provide the precise scores that applicants and employees who took the ICPS PCE received. (Hearing at 9:15:11). It estimated that it would take only 25 work hours to determine whether any employee who took the test suffered any adverse employment action afterwards. (Hearing at 9:20:32). Such an effort is not unduly burdensome "in light of the company's normal operating costs." *Maryland Cup*, 785 at 479. McLane has stated, however, that its human resources database does not capture whether an adverse employment action was in fact triggered by failing the test. Such information is only available by manually evaluating paper employment records. A court in this district recently found that providing information is unduly burdensome when "certain fields in the [Human Resources Database are] inaccurate or incomplete." *E.E.O.C. v. Bashas' Inc.*, ___ F. Supp. 2d. ___, CV-09-209 (RCB), 2011 WL 5822258, at *14 (D. Ariz. Sept. 30, 2011). McLane will inform the E.E.O.C. whether or not employees who took the test suffered an adverse employment action within 90 days of taking the test, but providing information on whether such action was directly triggered by taking the test presents an undue burden and will not be required.

Regarding the 1,942 applicants who took the test and were not hired, Respondents claim that determining whether the applicant was not hired based on the test performance would be an undue burden because they do not maintain digital records in their database regarding applicants who were never hired. (Hearing at 9:21:29). Tabulating the individualized results would therefore require hand-sorting through hard copies of McLane's employment files. McLane conceded that by merging information in its human resources database and the database containing the test scores, it could correlate applicants' pedigree information to their scores, and could note which applicants were never employed. (Hearing at 19:27:49). McLane did not estimate the number of hours collecting such data would take, but did not argue that it would present an undue burden. Since the ages and

- 10 -

1  scores of such applicants are relevant to the investigation, should McLane choose not to
2  provide information correlating the test scores and ages of applicants to whether the
3  applicant was hired, the E.E.O.C. will be granted permission to bear the burden of such a
4  search.

5  The Court has read both McLane's proposed sur-reply and the E.E.O.C.'s proposed
6  reply to that sur-reply. McLane's sur-reply consists principally of a fact-based defense
7  inappropriate to contest an administrative subpoena. *See Karuk Tribe*, 260 F.3d at 1076. The
8  E.E.O.C's reply to the sur-reply continues to state that the information is relevant to a
9  "matter under investigation" without defining what that matter is, and thereby attempts to
10 "render nugatory" the relevancy inquiry in its entirety. *Shell*, 466 U.S. at 72. The motions
11 for supplemental briefing are denied and the supplemental briefs have not been considered
12 in this order.

## CONCLUSION

14 Congress has authorized the E.E.O.C. to investigate allegations of age discrimination
15 under the ADEA absent the filing of a charge. Administrative subpoenas issued in
16 connection with any E.E.O.C. investigation, however, must be relevant to that investigation.
17 The E.E.O.C. purports to be investigating McLane's "use of a physical capability strength
18 test to make decisions concerning hiring, promotions, and whether employees can return to
19 work following leaves of absence of 30 days or more." It has not explained how the names,
20 phone numbers, addresses, genders, and social security numbers of every employee who has
21 ever taken the IPCS PCE are relevant to a generalized investigation as to whether using the
22 test constitutes age discrimination. Data on applicants and employees who have taken the
23 test, apart from pedigree information, is relevant to such an investigation, and McLane will
24 be ordered to provide such relevant information that it has not provided to date, so long as
25 it is not unduly burdensome.

26 **IT IS THEREFORE ORDERED**:

27 1.     Respondent's Motion for Leave to File Sur Reply (Doc. 20) and E.E.O.C.'s
28 Motion for Leave to file Reply to Sur-reply (Doc. 22) are **denied**.

2. Regarding those people who applied to McLane and took the IPCS PCE, McLane must provide the E.E.O.C. one of the following: **either**

    a. Information on applicants who took the IPCS PCE including:

        i. The applicant's age at the time the test was taken

        ii. The applicant's score on the test

        iii. The position for which the applicant applied

        iv. The score required for passing the test for the position in question

        v. Whether or not the applicant was hired; **or**

    b. Access to McLane's human resources records sufficient for the E.E.O.C. to obtain the data in item 2)a), above.

3. McLane must provide the E.E.O.C information on employees who took the IPCS PCE test, including:

    a. The employee's age at the time the test was taken

    b. The employee's score on the test

    c. The employee's position at the time the test was taken

    d. The reason the employee took the test

    e. The requisite score required for passing the test for the reason the employee took the test.

    f. Whether the employee suffered an adverse employment action within 90 days of taking the test.

    g. Whether the employee received a promotion or other positive employment action within 90 days of taking the test.

4. The Court issues no opinion on the remainder of the administrative subpoena.

DATED this 4th day of April, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 12 -